UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CT-3120-BO

**Gary Charles Smith**,

    Plaintiff,

v.

**Stephanie Hollembaek,** et al.,

    Defendants.

**Order &
Memorandum & Recommendation**

On June 11, 2015, Gary Charles Smith, a federal inmate proceeding *pro se*, filed a Complaint in this district pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (D.E. 4),[1] accompanied by an affidavit (D.E. 4-1). Also before the court are three motions for hearing (D.E. 1, 6, 13) and a motion for injunctive relief (D.E. 7).[2] The court has referred this matter to the undersigned magistrate judge for a frivolity review pursuant to 28 U.S.C. § 1915A.

Smith alleges a series of constitutional violations and seeks monetary relief under the *Bivens* doctrine as well as declaratory and injunctive relief. Initially, he claims that William Hoyle violated his rights under the First Amendment by breaching the clergy-penitent privilege and retaliating against him in response to Smith's attempt to complain to Hoyle's supervisors. Next, Smith alleges that Amy Bullock and Candace Gregory violated his rights by obstructing

---

[1] Smith filed an *ex parte* Motion for Emergency Hearing on June 1, 2015 and alleged that he was being punished for exercising his First Amendment right to freedom of speech (D.E. 1). On June 10, 2015, the court ordered Smith to file a civil complaint in order to initiate a case (D.E. 3).

[2] Smith has also filed a document which the Clerk has docketed as a Motion for a Temporary Restraining Order (D.E. 12). However, Docket Entry 12 is a witness list relating to the motion for injunctive relief (D.E. 7). The Clerk is directed to amend Docket Entry 12 to reflect that it is a witness list relating to Smith's request for injunctive relief.

his attempts to utilize the administrative remedy process. Smith also claims that Gregory violated his due process rights by interfering with his disciplinary hearings. Finally, Smith claims that Jocelyn Limer violated his First Amendment rights when she threatened to write him up if he continued to talk about her to other inmates. Smith also names Stephanie Hollembaek, the Warden at the Low Security Federal Correctional Institution at Butner ("LSFCI Butner"); Regina Faucette; Tony Hiscock; Randy Innes; Ned Jefferson; Kelly Smith; Millie M. Tyson; and Hope Morgan-Ward as defendants and seeks various forms of relief from them for the "humiliation and disparagement" caused by their actions.

After reviewing the pleadings in this matter, the undersigned magistrate judge recommends that the district court dismiss Smith's Amended Complaint. Several of Smith's claims suffer from general deficiencies that require their dismissal. First, Smith's claims for injunctive and declaratory relief are moot because the Bureau of Prisons transferred him from LSFCI Butner. Next, Smith's claims against a number of defendants based upon alleged mental or emotional injuries must be dismissed under the Prison Litigation Reform Act because he has not alleged a corresponding physical injury or sexual assault.

When considered on the merits, Smith's claims fail as well. He cannot maintain a First Amendment claim against Hoyle for violating the clergy-penitent privilege because the privilege is an evidentiary doctrine and not a source of tort liability. Additionally, he cannot state a claim for retaliation against Hoyle because claims of retaliation based upon complaints against prison staff, whether made formally through the grievance process or informally, do not implicate constitutional concerns. Further, Smith's claims against prison staff relating to interference with the grievance process fail because there is no constitutional right to participate in the grievance process. Similarly, Smith cannot state a claim against Gregory for a violation of his rights

arising out of the disciplinary process resulting in the loss of visitation privileges because there is no constitutional right to visitation. Finally, Smith cannot state a claim against Limer for a violation of his First Amendment rights due to her threats to write him up for a disciplinary infraction because mere threats cannot form the basis of a constitutional tort.

I.  Background

Smith is presently serving a 222-month prison sentence for bank fraud, aggravated identity theft, money laundering, access device fraud, and social security fraud. Am. Compl. at ¶¶ 1–2, D.E. 4. After serving a portion of his sentence at FCI Fort Worth, the Bureau of Prisons transferred Smith to LSFCI Butner. Smith Aff. ¶¶ 4, 5, D.E. 4-1.

Approximately two weeks after his arrival at Butner, Smith ran into Staff Chaplain Hoyle while Hoyle was heading to his office. Smith Aff. ¶ 12. Over the course of the next 90 minutes, Hoyle and Smith discussed a variety of issues including Hoyle's education and professional experience, Hoyle's concerns over the administration of the United Methodist Church, Hoyle's views on various members of the prison staff and administration, and potential shared acquaintances. Smith Aff. ¶¶ 17–31. According to Smith, Hoyle asked him "the usual get-acquainted type of questions." Smith Aff. ¶ 24.

During the conversation, Smith mentioned that he knew William H. Willimon, Jr., a bishop in the United Methodist Church. Smith Aff. ¶¶ 27, 34. Later, Hoyle reached out to Willimon to confirm whether he knew Smith. Smith Aff. ¶ 32. Smith considered Hoyle's actions "a flagrant violation of the clergy-penitent privilege" and sought to "lodge a formal complaint against Hoyle with officials of the North Carolina Conference of the United Methodist Church…." Smith Aff. ¶¶ 38, 39. Smith sent an email to Hoyle requesting the names and

3

addresses of various United Methodist Church officials so he could contact them. Smith Aff. ¶ 39.

Smith claims that in response to his email, Hoyle cited Smith for "comitt[ing] the high severity prohibited acts of extortion and blackmail" and placed Smith in solitary confinement for 11 days. Smith Aff. ¶ 40. However, it appears that Smith was never charged with or convicted of a disciplinary infraction and the incident report related to this incident cannot be found. Am. Compl. ¶ 37.

Several months later, in March 2015, the prison was placed on lockdown due to an outbreak of Norovirus. Am. Compl. ¶ 40. On March 22, 2015, during the lockdown, Hoyle met with another inmate and told the inmate that the Norovirus outbreak was caused by the inmates failing to wash their hands, take showers, and properly cleaning themselves after using the bathroom. Am. Compl. ¶ 42. The inmate relayed these comments to Smith, who was "outraged" by Hoyle's comments. Am. Compl. ¶ 42.

That same day, Smith sent an email complaining about Hoyle's comments to a general mailbox, but addressed it to Supervisory Chaplain Carlton Gooding. Smith Aff. ¶ 44. In his correspondence to Gooding, Smith referred to Hoyle as "Satan's emissary." Am. Compl. ¶ 49. Hoyle intercepted the email before it could get to its intended recipient and felt that its contents were "offensive and insolent." Smith Aff. ¶ 46–47; Am. Compl. ¶ 50. Smith claims that Hoyle retaliated against him for sending this email the following day by writing him up for unauthorized contact with the public and insolence to a staff member. Smith Aff. ¶ 47.

On March 27, 2015, Smith's Unit Disciplinary Committee ("UDC") met and rejected the unauthorized contact with the public charge and requested that Hoyle rewrite his report on the insolence to a staff member claim. Smith Aff. ¶ 50. Hoyle submitted his revised report on or

4

about March 29, 2015. Smith Aff. ¶ 52. On April 10, 2015, Hoyle's case manager Regina Faucette told Smith that prison staff lost or misplaced the report and that the insolence charge would need to be expunged from his record. Smith Aff. ¶ 54.

However, on or about April 14, 2015, staff located the report and Smith's UDC met to consider the charge against him. Smith Aff. ¶ 55. Members of the UDC said that although they did not believe Smith had been insolent towards a staff member, another member of prison staff had instructed the UDC to find him guilty. Smith Aff. ¶ 56. Smith claims, without explanation, that Candace Gregory was the staff member who gave this order to the UDC. Smith Aff. ¶ 56. The UDC ultimately found Smith guilty on the insolence charge and sanctioned him with a 15 day loss of visitation privilege. Am. Compl. ¶ 61. However, this sanction would be suspended if Smith had "90 days of clear conduct." Am. Compl. ¶ 61. The Amended Complaint does not indicate whether Smith successfully completed this 90-day period.

The next day, on April 15, 2015, in light of the Hoyle's retaliatory actions and the rigged disciplinary review process, Smith prepared two administrative remedy requests and delivered them to a counselor in his housing unit. Smith Aff. ¶ 59. Prison staff failed to process Smith's grievance until April 24, 2015, when Smith followed up with Gregory. Am. Compl. ¶¶ 68–72. Smith later learned that Amy Bullock was responsible for entering grievances into the system. Am. Compl. ¶ 71.

Later, Smith complained about Gregory during a telephone call with a friend. Smith Aff. ¶ 67. Gregory, who was listening in to the call, decided to retaliate against Smith for his negative comments about her and obstructed the processing of his grievances. Am. Compl. ¶ 79.

Smith also claims that he had a negative encounter with Defendant Jocelyn Limer in late April 2015. While Smith was eating lunch, Limer told Smith that he should meet her outside the

5

dining room to talk when he finished his meal. Am. Compl. ¶ 82. When Smith met Limer, she told him that if he continued to talk about her to other prison staff, she "would find 'something' to write [him] up for." Am. Compl. ¶ 83. Smith claims that Limer's statement put him in "an uncertain, vulnerable state" because of the ever-present threat that he could be written up. Am. Compl. ¶ 85.

## II. Discussion

### A. Standard for Screening Pursuant to 28 U.S.C. §1915A

The Prison Litigation Reform Act of 1996 ("PLRA") requires courts to review, prior to docketing, actions filed by prisoners against governmental entities or officials. 28 U.S.C. § 1915A(a). The purpose of this review is to eliminate those claims that unnecessarily impede judicial efficiency and the administration of justice. The court must examine the pleadings, identify cognizable claims, and dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* at § 1915A(b).

The court may dismiss a complaint as frivolous due to either legal or factual shortcomings. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A cause of action is legally frivolous if it is "based upon an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). A complaint is factually frivolous when its factual allegations are "fanciful, fantastic, and delusional." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992).

Malicious suits are those that constitute an abuse of the judicial process. This abuse can take a number of forms: repeated filings of the same legally insufficient claims, *Ball v. Bristol City Sheriff's Dep't*, No. 7:10-CV-00350, 2010 WL 3199920, at *2 (W.D. Va. Aug. 12, 2010);

knowingly submitting a pleading that contains demonstrably false factual statements, *Galeas v. Byrd*, No. 3:11-CV-543-RJC, 2011 WL 6370373, at *3 (W.D.N.C. Dec. 20, 2011) *aff'd*, 469 F. App'x 236 (4th Cir. 2012); filing claims that are duplicative of pending litigation, *Pittman v. Moore*, 980 F.2d 994, 994–95 (5th Cir. 1993); or submitting a pleading that contains threats or demeans the court, *Crisafi v. Holland*, 655 F.2d 1305, 1309 (D.C. Cir. 1981).

A complaint fails to state a claim upon which relief may be granted if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Smith's status as a *pro se* party relaxes, but does not eliminate, the requirement that his complaint contain facially plausible claims. The court must liberally construe a *pro se* plaintiff's allegations, but it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011).

Finally, the court may dismiss a complaint if it seeks monetary relief from a defendant who is immunized from liability for monetary damages. This immunity can take any number of forms, including, but not limited to, immunity under the Eleventh Amendment, *see Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001), or common-law doctrines such as judicial, legislative, and prosecutorial immunity, *see Pierson v. Ray*, 386 U.S. 547 (1967).

**B.    Standard for Claims under the Bivens Doctrine**

Smith brings his claims pursuant to the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court recognized an implied right of action against federal officials for the violation of

7

the Fourth Amendment. *Id.* at 397. Since the original decision in *Bivens*, the Supreme Court has been hesitant to expand the doctrine's reach and has only done so twice. *See Davis v. Passman*, 442 U.S. 228 (1979) (recognizing an implied damage remedy under the Due Process Clause of the Fifth Amendment for a claim of gender discrimination by a congressional employee); *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing an implied damage remedy under the Cruel and Unusual Punishments Clause of the Eighth Amendment). The court has otherwise declined to utilize the *Bivens* doctrine as a remedy for constitutional torts allegedly committed by federal officers. *See Minneci v. Pollard*, 132 S.Ct. 617, 621–23 (2012).

Smith's claims are not among those which have been explicitly recognized by the Supreme Court under *Bivens*. However, for the purposes of this motion, the court assumes, without deciding, that *Bivens* appropriate vehicle for Smith to utilize to seek relief.

### C. Claims based upon Emotional Injuries

Smith repeatedly seeks relief for "humiliation and disparagement" allegedly caused by the Defendants. Am. Compl. Prayer for Relief ¶¶ C–H. However, the Prison Litigation Reform Act prohibits suits by inmates based upon "mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act…." 18 U.S.C. § 1997e(e). Smith's claim of emotional injuries are not accompanied by allegations of a physical injury or sexual act and, therefore, should be dismissed.

### D. Requests for Injunctive and Declaratory Relief

Smith requests declaratory and injunctive relief recognizing that his constitutional rights have been violated and prohibiting further retaliation against him by the defendants. Am. Compl. Prayer for Relief ¶¶ A, B. Additionally, he seeks a declaratory judgment against Faucette, Hiscock, Jefferson, Smith, and Tyson for their roles in the disciplinary proceedings

8

instituted against him. Am. Compl. Prayer for Relief ¶ H. However, these claims are moot because he is no longer incarcerated at Butner (D.E. 18). *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there."). Therefore, Smith's claims for injunctive and declaratory relief should be dismissed.

### E. Claims against Hollembaek

Smith seeks monetary damages from Warden Hollembaek "for humiliation and disparagement borne by" her alleged actions. However, the Amended Complaint fails to identify any actions directly taken by Hollembaek which could constitute a violation of Smith's constitutional rights. In order to establish liability under the *Bivens* doctrine, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In light of Smith's failure to allege individual actions by Hollembaek that violated his constitutional rights, his claims against her should be dismissed.

### F. Claims against Bullock

Smith's claim against Bullock is based upon the allegation that she "imped[ed] and obstruct[ed] Plaintiff's ability to pursue his administrative remedies." Am. Compl. Prayer for Relief ¶ E. However, there is no constitutional right to a grievance process. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Thus, Smith's claims against Bullock should be dismissed as frivolous.

### G. Claims against Gregory

Smith first seeks $500,000 from Gregory on the theory that Gregory violated his constitutional rights by "influencing and obstructing the disciplinary process…." Am. Compl.

9

Prayer for Relief ¶ E.  Specifically, Smith alleges that Gregory instructed the Unit Disciplinary Committee to find him guilty of a charge of insolence towards prison staff.  Am. Compl. ¶ 58.  After finding Smith Guilty, the UDC sanctioned him with a loss of visitation privileges for 15 days.  *Id.* at 61.  Although it is not entirely clear from the Amended Complaint, it appears that the UDC suspended the imposition of the sanction if Smith was able to go 90 days without another infraction.  *Id.*

Smith appears to allege that Gregory's actions violated his due process rights.  Am. Compl. at ¶ 8. However, there is no constitutional right to visitation.  *White v. Keller*, 438 F. Supp. 110, 115 (D. Md. 1977), *aff'd*, 588 F.2d 913 (4th Cir. 1978); *see also Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461, (1989) (finding no right to visitation guaranteed by the Due Process Clause).  Accordingly, Smith's claim against Gregory lacks merit and should be dismissed as frivolous.  *See Amuah v. Miner*, No. 5:11-HC-2054-FL, 2012 WL 333759, *2 (E.D.N.C. Feb. 1, 2012) (rejecting due process clause challenge to loss of visitation privileges as a result of disciplinary conviction).

Smith next attempts to hold Gregory liable for "impeding and obstructing [his] ability to obtain administrative redress of his legitimate complaints…."  Am. Compl. Prayer for Relief ¶ E. As noted above, there is no constitutional right to a grievance process.  *Adams*, 40 F.3d at 75. Thus, Smith's claims against Gregory on this basis should be dismissed as frivolous.

  H. **First Amendment Claims against Hoyle**

With respect to Hoyle, Smith claims that Hoyle violated his First Amendment rights by violating the clergy-penitent privilege and instituting disciplinary against him after Smith complained or threated to complain about Hoyle's actions. Neither of these claims have merit.

10

Smith cannot state a claim for a violation of his First Amendment rights based upon an alleged breach of the clergy-penitent privilege. As an initial matter, the clergy-penitent privilege is an evidentiary rule that prohibits clergy from being compelled to testify in a judicial proceeding regarding information conveyed in the course of providing spiritual counsel and advice. N.C. Gen. Stat. §8-53.2. The court has been unable to locate any case in which disclosure of information conveyed in such a setting form the basis for a constitutional tort.

Moreover, even if a violation of the clergy-penitent privilege could establish a violation of the First Amendment, Smith's Amended Complaint does not establish such a claim. In order to be subject to the privilege, two elements must be satisfied: (1) a person must be seeking the counsel and advice of his minister; and (2) the information must be entrusted to the minister as a confidential communication. *State v. West*, 317 N.C. 219, 223, 345 S.E.2d 186, 189 (1986). Here, Smith claims Hoyle violated the privilege by calling a bishop in the United Methodist Church to confirm Smith's statement that he was acquainted with the bishop. Am. Compl. ¶¶ 27, 28, 32, 38. There is no indication in the Amended Complaint that this exchange had anything to do with spiritual counseling or advice. *Cf. State v. Jackson*, 77 N.C. App. 832, 834, 336 S.E.2d 437, 438 (1985) (holding that it was error to admit statements made by a defendant to a minister after a prayer-session); *Spencer v. Spencer*, 61 N.C. App. 535, 539, 301 S.E.2d 411, 413 (1983) (recognizing applicability of clergy-penitent privilege to statements made during marital counseling with minister). Instead, as Smith admits in his Amended Complaint, this conversation was part of a series of "get-acquainted type of questions" between Smith and Hoyle the first time that they met. Am. Compl. ¶ 24. Therefore, Smith's claim regarding a violation of the clergy-penitent privilege lacks merit and should be dismissed.

Smith also claims that Hoyle violated his First Amendment rights by initiating disciplinary proceedings against him when he attempted to complain to Hoyle's superiors, both at the prison and in the United Methodist Church, about the alleged violation of the clergy-penitent privilege and Hoyle's comments that a lack of inmate hygiene led to an outbreak of Norovirus at the prison. Am. Compl. ¶¶ 34, 50. In order to state a claim for retaliation, the "alleged retaliatory action must have been taken with regard to the exercise of some constitutionally protected right, or the retaliatory action itself must violate such a right." *Daye v. Rubenstein*, 417 F. App'x 317, 319 (4th Cir. 2011) (citing *Adams*, 40 F.3d at 75).

Courts have repeatedly held that allegations of retaliation based upon complaints about prison staff do not meet this standard. *Id.* (rejecting an inmate's retaliation claim because verbal expressions of dissatisfaction about prison staff are not constitutionally protected); *Whitfield v. Craven Corr. Inst.*, No. 5:12-CT-3064-FL, 2015 WL 1383613, at *9 (E.D.N.C. Mar. 25, 2015) (dismissing an inmate's claim that he was terminated from his prison job in retaliation for complaining about an officer's conduct); *Humphrey v. Revell*, No. 5:11-CT-3168-FL, 2014 WL 1096262, at *7 (E.D.N.C. Mar. 19, 2014) (dismissing an inmate's claim that he was placed in the SHU in retaliation for filing complaints against prison staff); *Dilworth v. Corpening*, No. 1:15-CV-36-FDW, 2015 WL 3448785, at *3 (W.D.N.C. May 29, 2015) (holding that a claim of retaliation as a result of verbal complaints regarding a correctional officer were not cognizable because complaints were effectively the same as a grievance), *aff'd in part as modified*, 613 F. App'x 275 (4th Cir. 2015); *Rountree v. Clark*, No. 7:11-cv-572, 2014 WL 4923163, at *3 n.3 (W.D. Va. Sept. 30, 2014) (noting that in the Fourth Circuit, "a prisoner's use of grievance procedures is not a protected First Amendment right" and therefore "allegations that officials have retaliated against an inmate for filing grievance forms do not state a cognizable claim for

relief under Section 1983"). As in these other cases, Smith's attempts to complain about Hoyle's actions were effectively the same as participating in the prison grievance process. Therefore, Smith's allegations that Hoyle retaliated against him for complaining or attempting to complain to Hoyle's supervisors about his actions does not implicate a constitutionally protected right and Smith's retaliation claim should be dismissed.

### I. First Amendment Claim against Limer

Smith claims that Limer violated his First Amendment rights when she told him that she would write Smith up if he continued to talk about her to other prison staff. Am. Compl. ¶ 83. Generally, "[w]ords by themselves do not state a constitutional claim, without regard to their nature." *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990). Courts have repeatedly dismissed constitutional claims based upon mere threats of discipline by prison staff. *Karacsonyi v. Massenburg*, No. 93-7068, 1994 WL 632991, at *1 (4th Cir. Nov. 14, 1994) (affirming dismissal of *Bivens* claim based upon allegation that correctional counselor at FCI Butner threatened the plaintiff with continued confinement unless he signed a paper indicating his grievances were resolved); *Williams v. New River Valley Reg'l Jail*, 7:11-cv-00029, 2011 WL 322836, at *1 (W.D. Va. Jan. 31, 2011) (dismissing claim based upon allegation that correctional officer threatened, among other things, to place inmates on lockdown); *Saunders v. Mitchell*, No. 8:09-1134-JFA-BHH, 2008 WL 2410758, at *1 (D.S.C. Aug. 3, 2009) (dismissing claim based upon threats to lock an inmate away in response to requests for typewriter ribbon). In the absence of any allegations that Limer did more than merely threaten him, Smith's claims against her fails as a matter of law and should be dismissed.

13

**III.     Remaining Motions**

Also pending before the court is a series of procedural motions. D.E. 6, 7, 12, 13. In light of the recommendation that the district court dismiss Smith's Amended Complaint, these motions are denied as moot.

**IV.     Conclusion**

As discussed above, the undersigned magistrate judge recommends that the district court dismiss Smith's Complaint. Additionally, Smith's remaining motions are denied as moot.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on plaintiff.  Plaintiff shall have until 14 days after service of the Memorandum and Recommendation on plainitff to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If plaintiff does not file written objections to the Memorandum and Recommendation by the foregoing deadline, plaintiff will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, plaintiff's failure to file written objections by the foregoing deadline will bar plaintiff from appealing to the**

**Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: F gego dgt 37. 4237

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE